## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KWANZEL HOWERTON, a minor, by and
through his Next Friend, TINA HOWERTON,

                Plaintiff,

v.

SANDRA BLOMQUIST, and CLARKSTON
COMMUNITY SCHOOLS,

                Defendants.

_____ /

Case Number: 05-71352

JUDGE PAUL D. BORMAN
UNITED STATES DISTRICT COURT

### OPINION AND ORDER GRANTING DEFENDANT CLARKSTON COMMUNITY SCHOOLS' MOTION FOR SUMMARY JUDGMENT

Now before the Court is Defendant Clarkston Community Schools' Motion for Summary Judgment. The Court held a motion hearing on August 3, 2006. Having considered the entire record, and for the reasons that follow, the Court GRANTS Defendant's Motion for Summary Judgment.

## I.      FACTS

Plaintiff Kwanzel Howerton ("Plaintiff") is a minor represented by his mother, Tina Howerton ("Ms. Howerton"). (Compl. ¶ 1). Both Plaintiff and Ms. Howerton reside in Michigan. (*Id.*). At the time of the incident that forms the basis of this lawsuit, Plaintiff was in the seventh grade at Sashabaw Middle School ("Sashabaw"). ( Pl.'s Resp. 1). Sashabaw is a public school under the administration of Defendant Clarkston Community Schools ("CCS" or the "District"). CCS is an educational municipal organization operating under the laws of

Michigan. (Compl. ¶ 4). Defendant Sandra Blomquist ("Blomquist") is a teacher for CCS who worked at Sashabaw Middle School. (Compl. ¶ 2).

This case revolves around events that took place on November 8, 2004. On that date, Plaintiff was walking down a school hallway with a female student while school was in session. (Pl.'s Resp. 2). Plaintiff tried grabbing the female student's bag of Cheetos in an allegedly playful-type manner. (*Id*.). After witnessing Plaintiff's interaction with the female student, Blomquist allegedly grabbed Plaintiff in the hallway and pushed him into a locker. (Compl. ¶ 7). It is also alleged that Blomquist verbally abused Plaintiff at this time. (*Id*.). Plaintiff then reported the incident to Brenda Bentley, the school social worker. (Pl.'s Resp. 8). At the time of the incident, Blomquist was engaged in her duties as a school teacher for CCS. (*Id*.). Blomquist denies placing her hands on Plaintiff. (*Id*.).

After the incident was reported, Principal Linda Foran ("Principal Foran") took Plaintiff's statement, and statements of other students who witnessed the incident. (*See* Pl's. Resp. Ex. M, Handwritten Student Statements). Plaintiff suffered injuries to his back and arms from the incident. (Compl. ¶ 9). On November 9, 2004, Plaintiff sought treatment from a family physician who prescribed pain-relievers and an MRI. (Pl.'s Resp. 8). Principal Foran and Assistant Principal Glenn Gualtieri ("Assistant Principal Gualtieri") viewed the bruises the same day that Plaintiff visited the doctor. (*Id*.).

On November 10, 2004, Blomquist was issued a formal reprimand for the incident by Principal Foran. (Pl.'s Resp. 8-9; *see* Pl.'s Resp. Ex. O, Nov. 10, 2004 Letter of Reprimand). Blomquist was then placed on administrative leave during an investigation of the incident. (Pl.'s Resp. 9). Subsequently, Blomquist resigned her teaching position. (*Id.*).

2

On April 7, 2005, Plaintiff filed a seven-count Complaint[1] on April 7, 2005 against CCS and Blomquist.  Plaintiff brought the following claims against Blomquist:  Assault, Battery, Intentional Infliction of Emotional Distress, Gross Negligence/Qualified Immunity, and civil rights violations.  Plaintiff brought the following claims against CSS: Gross Negligence, *Respondeat Superior*, Section 1983 Municipal Liability, and civil rights violations.

CCS argues that: (1) Plaintiff's state law claims against the school district are barred by governmental immunity; (2) there is no legal basis upon which CCS can be found liable for Blomquist's alleged misconduct; (3) there is no evidence to support Plaintiff's claim of municipal  and vicarious liability under 42 U.S.C. § 1983; (4) Plaintiff's claims of insufficient training, even if true, still require evidence of deliberate indifference by CSC, which is absent in this case; (5) Plaintiff's unsupported claims of a special relationship between CCS and Plaintiff do not provide a basis for holding CCS liable; and (6) there is no evidence of race discrimination.      Plaintiff responds that there is enough evidence to show that CCS, through its officials and administrators, had notice that Blomquist would cause constitutional deprivations.  Plaintiff contends that CCS had notice that Blomquist was likely to commit an assault and that the policies and customs of CCS caused the deprivation.  Plaintiff also avers that Summary Judgment is inappropriate at this time, as there is still a pending motion to compel production of psychological records in this matter.

---

[1]      Count I:        Assault
         Count II:       Battery
         Count III:      Intentional Infliction of Emotional Distress
         Count IV:       Gross Negligence/Qualified Immunity
         Count V:        Respondeat Superior/Vicarious Liability
         Count VI:       Violation of Civil Rights (Blomquist)
         Count VII:      Civil Rights Violation (Clarkston Community Schools)

## II.    ANALYSIS

### A.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof."  Fed. R. Civ. P. 56(b).  Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Conversely, where a reasonable jury could not find for the non-moving party, there is no genuine issue of material fact for trial.  *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).  In making this evaluation, the court must examine the evidence and draw all

4

reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.     Discussion**

**1.     State Law Claims Against CCS**

a.     Gross Negligence and Respondeat Superior

CCS first argues that Plaintiff's state law gross negligence and respondeat superior claims against CCS are barred by the Michigan Governmental Tort Liability Act. Plaintiff did not respond to this argument.[2]

The Michigan Governmental Tort Liability Act provides:

Except as otherwise provided in this act, a governmental agency is immune from tort liability *if the governmental agency is engaged in the exercise or discharge of*

---

[2] It appears from the Complaint that Plaintiff's gross negligence claim applies only to Blomquist, although CCS believes otherwise. (*See* Compl. ¶¶ 24-30).

> *a governmental function*. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

M.C.L. § 691.1407(1) (emphasis added).   "[A] school district is a level of government of the type contemplated by the Legislature in the statute regarding absolute governmental immunity." *Nalepa v. Plymouth-Canton School District*, 207 Mich. App. 580, 587 (1994).  "Statutory exceptions to governmental immunity are to be narrowly construed."  *Kerbersky v. Northern Mich. Univ.*, 458 Mich. 525, 529 (1998).

The six statutory exceptions to governmental immunity are: (1) failure to maintain highways; (2) negligent operation of a government-owned vehicle; (3) ownership or operation of a governmental hospital; (4) performance of a proprietary function; (5) negligent failure to maintain or repair a public building; and (6) the sewage disposal system exception.  *Grimes v. Mich. DOT*, 475 Mich. 72, 77 n.16 (2006).

Additionally, the gross negligence exception in Mich. Comp. Law 691.1407(2) applies only to claims against an:

> Officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency . . .

"A plaintiff must plead facts in his complaint in avoidance of immunity, indicating that the alleged tort falls outside the protection afforded by sovereign or governmental immunity." *Smith v. Dep't of Public Health*, 428 Mich. 540, 591 (1987).

In the case at bar, Plaintiff has not alleged any facts that would satisfy an exception to governmental immunity under the Michigan Governmental Tort Liability Act for gross

6

negligence or *respondeat superior*.  Accordingly, because Plaintiff has not stated a claim which fits within a statutory exception, the Court grants CCS's Motion for Summary Judgment as to Plaintiff's state law gross negligence and *respondeat superior* claims.[3]

### 2.    Municipal Liability under 42 U.S.C. § 1983

CCS argues that Plaintiff has no basis for holding it liable for the alleged assault committed by Blomquist.  CCS contends that it cannot be liable unless it had prior notice of obvious misconduct indicating that Blomquist would assault a student, and that there is no evidence that it had prior notice.

Plaintiff responds that CCS had notice that Blomquist would assault a student.  Plaintiff argues three theories to support her municipal liability cause of action.  First, Plaintiff argues that CCS' reasonable force policy, which allows district personnel to use reasonable physical force upon a student that is necessary to maintaining a save environment, opens the door for abuse by its teachers.  Plaintiff contends that CCS had notice of Blomquist's propensity to assault a student, and thus was deliberately indifferent.  Plaintiff avers that the Allie Willis document, *infra*, and CCS' knowledge of Blomquist's psychological problems creates a genuine issue of material fact as to whether CCS had notice.  Further, Plaintiff contends that Blomquist displayed

---

[3] Likewise, Plaintiff's claim holding the school district liable under a theory of vicarious liability fails.  Vicarious tort liability can be imposed upon a governmental agency when:
> (1) the employee committed a tort while acting during the course of employment and within the scope of his authority, and
> (2) the employee committed a tort while engaged in an activity which was non-governmental or proprietary or which fell within an exception to the governmental immunity act.

*Hunley v. Phillips*, 164 Mich. App. 517, 525 (1987).  Here, Blomquist was acting in the course of employment but did not commit the alleged tort in an activity that was non-governmental or within an exception to the governmental immunity act.

odd and inappropriate behavior, which also should have put CCS on notice.

Plaintiff's second theory is that CCS had a custom of inaction that was exhibited by CCS from 1998 until the time of the incident.

Third, Plaintiff argues that CCS's custom or policy of failure to train supports a municipal liability cause of action.

CCS replies that the Allie Willis allegations were not reported until after the date Plaintiff claims he was assaulted, and that there is no evidence showing that Blomquist's depression made her prone to violence. CCS also argues that Blomquist's other odd behavior did not indicate an increased risk of violence and are irrelevant on the issue of whether CCS had notice of a substantial risk of an assault by Blomquist. Further, CCS argues that it does not have a policy encouraging the use of excessive force.

A plaintiff can bring a claim under section 1983 when he or she is deprived "of any rights, privileges, or immunities secured by the Constitution and laws," as a result "of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. In a municipal liability claim against a school district, the plaintiff must demonstrate both the deprivation of a constitutional right, and that the school district is responsible for that violation. *See Doe v. Claiborne County*, 103 F.3d 495, 505-06 (6th Cir. 1996). More specifically, while a municipality may be held liable under section 1983 for a constitutional violation directly attributable to it, section 1983 does not impose vicarious liability on a municipality for the constitutional torts of its employees. *Monell v. Department of Soc. Servs. of the City of New York*, 436 U.S. 658, 692 (1978). As a result, in order for a plaintiff to state a claim against a city or a county under section 1983, the plaintiff must show that his injury was caused by an

8

unconstitutional "policy" or "custom" of the municipality. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81(1986). A "custom" is a "'legal institution' not memorialized by written law." *Doe*, 103 F.3d. at 509. "A city's custom or policy can be unconstitutional in two ways: 1) facially unconstitutional as written or articulated; or 2) facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers." *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006). Where, the identified policy is itself facially valid, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997) (internal citations omitted). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 1391. In other words, the risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be "plainly obvious." *Id.* at 1393.

a.     Notice

The District claims that it did not have knowledge or notice of Blomquist being involved in any plainly obvious instances of misconduct. According to CCS, there were no prior complaints against Blomquist alleging that she used physical force. CCS asserts that there was no notice and therefore no compelling need to act. Thus, CCS avers that no policy, procedure or custom was a cause of Plaintiff's injuries.

Plaintiff, on the other hand, argues that the Allie Willis document, Blomquist's psychological disposition and Blomquist's odd behavior are evidence that CCS was on notice.

9

The Allie Willis document was written by Assistant Principal Gualtieri[4] made up of handwritten notes taken during a report of an incident between student Allie Willis and Blomquist.  The Allie Willis document states:

> - occurred in the first few weeks of school
> - was walking with Nick Robeson
> - were pushing each other
>     - separated by Ms. Blomquist and pushed into a locker.
>         -told not to do it again and threatened with a write up for next time.
>         -each pushed in shoulder simultaneously into locker
>         -had a bruise on the shoulder that hit the locker

(Pl.'s Resp. Ex. E, Allie Willis Document).  Plaintiff contends that the Willis incident occurred before Plaintiff's incident, and argues that CCS must have had notice before Plaintiff's incident and was aware that an assault was likely to occur.  Plaintiff claims that there is "nebulous and confusing" testimony as to when Principal Foran and Assistant Principal Gualtieri had notice of the Willis document.  However, Assistant Principal Gualtieri testified that he did not remember when he drafted the Allie Willis document, (Pl.'s Resp. Ex. F, Gualtieri Dep. 5: 15-17), and Principal Foran testified that the "incident must have happened before [Plaintiff's incident], but [she] did not have any information regarding [the] incident prior to [Plaintiff's] incident."  (Pl.'s Resp. Ex. D, Foran Dep. 22: 9-14).

Because Plaintiff only relies on the fact that the incident occurred before Plaintiff's incident and does not provide any evidence[5] to support his contention that CCS had notice of the

---

[4] Gualtieri admits that the handwriting on the document appears to be his.  (Pl.'s Resp. Ex. F, Gualtieri Dep. 5:10-11).

[5] CCS provides an affidavit from Principal Foran stating that she did not find any complaints, prior to the November 8, 2004 incident claiming that Blomquist has used physical force to control or discipline students.  (CCS's Br. Ex. C, Foran Aff. ¶ 6).

Willis incident before November 8, 2004, the Court finds that even in a light most favorable to Plaintiff, the Allie Willis incident did not put CCS on notice of Blomquist's misconduct.

Plaintiff also argues that CCS was on notice due to Blomquist's psychological issues. Plaintiff alleges that CCS allowed Blomquist to take two years off to remedy her psychological issues and knew that her issues were extensive enough that the two year break from teaching was necessary.  Plaintiff contends that CCS's knowledge of Blomquist's depression and anxiety, and its knowledge of the drugs she was taking for her psychological problems, were "red flags" for the school system.  CCS responds that no reasonable person would conclude that Blomquist was likely to attack a student because she was treated for depression, and avers that there is no evidence showing that it was advised that her psychological condition made her prone to violence.

The Court does not find Plaintiff's argument persuasive.  Plaintiff does not put forth evidence showing that CCS had notice that Blomquist's psychological problems made her prone to violence.  In fact, Plaintiff admits that Blomquist's psychological issues are "not clear-cut incidents of assault behavior."  (Pl.'s Resp. 14).  Plaintiff additionally argues that Blomquist's psychological state is relevant and an inference can be drawn that her issue put CCS on notice that anything could happen.  However, the Court finds that this type of inference is too large a leap in logic, and therefore Blomquist's psychological issues did not put CCS on notice.[6]

Lastly on the issue of notice, Plaintiff argues that Blomquist's odd behavior following her

---

[6] There is also testimony by Principal Foran that, as far as she was aware, Blomquist's leave was due to asthma and difficulty breathing, not depression or anxiety.  (Pl.'s Resp. Ex. D, Foran Dep. 39: 11-19).  However, the CCS was certainly aware of the reason for Blomquist's leave and required assurances from her psychiatrist, Dr. Dabbagh, before they would allow her to return to her position.  (Pl.'s Resp. Ex. C, CCS Letter 3/5/02).

11

return to work gave notice to CCS.  Plaintiff asserts that: (1) inappropriate emails sent to parents days before Plaintiff's incident; (2) the playing of inappropriate music in her classroom; (3) obtaining a PPO against a fellow staff member; (4) the admission of two panic attacks; and (5) incidents of Blomquist crying and talking to herself, were notice to CCS.  CCS responds that the evidence shows only four instances of questionable judgment,[7] and such conduct does not show that an assault was likely to occur, nor is it relevant to the case at hand.

The Court agrees with CCS, and finds that the "odd" behavior displayed by Blomquist is not the sort of behavior that would give CCS an indication that Blomquist might assault a student because none of the incidents exhibited a propensity for violence.

b.    Policy or Custom

A municipality, like a supervisor, may not be held liable under section 1983 upon the theory of *respondeat superior*.  *Monell v. Dep't of Social Servs*., 436 U.S. 658, 691 (1978).  A municipality may be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Id.* at 694.  For municipal liability, there must be an "affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).  "There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken

---

[7] The four instances were:  moving a desk claimed by another teacher during classroom setup; contacting Mrs. Young regarding a PPO she obtained against her husband; playing inappropriate music in her classroom; and sending an email to parents which was possibly overly critical of the students' performance.

12

by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 694.)

i.      *Reasonable Force Policy*

CCS argues that there is no evidence showing that any school policy, procedure or custom was a cause of Plaintiff's injuries.  Plaintiff responds that CCS has a policy which allows its personnel to use reasonable physical force upon a student when it is necessary to maintain a safe environment.  (CCS's Br. Ex. D, Administrative Guidelines).  Plaintiff contends that this policy opens the door to abuse and that the standard is a subjective one which is vague and overbroad.

In its reply, CCS argues that it is clear from school policy that the use of force is discouraged and that force can be used only in exceptional circumstances.

"It is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of the County Commissioners v. Brown*, 520 U.S. 397, 404-05 (1997). The plaintiff must also show that the municipality was the "moving force" behind the alleged injury through deliberate conduct on its part. *Id*. at 405 ("A plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."). "[A] Plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has lead an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.  A showing of simple or even heightened negligence will not suffice." *Id*. at 407.

13

While Plaintiff is correct in stating that CCS has a policy which allows personnel to use reasonable force when necessary to keep the schools safe, the corporal punishment policy also states that its personnel shall not "hit, strike, grab, punch, or inflict other bodily pain on a student." (CCS's Br. Ex. D, Administrative Guidelines). Further, as stated by CCS in its reply, its corporal punishment policy follows Mich. Comp. Law 380.1312(4). Mich. Comp. Law 380.1312(4) states:

> A person employed by or engaged as a volunteer or contractor by a local or intermediate school board or public school academy **may use reasonable physical force upon a pupil as necessary to maintain order and control in a school or school-related setting for the purpose of providing an environment conducive to safety and learning**. In maintaining that order and control, the person may use physical force upon a pupil as may be necessary for 1 or more of the following:
>
> > (a) To restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district or public school academy functions within a school or at a school-related activity, if that pupil has refused to comply with a request to refrain from further disruptive acts.
> > (b) For self-defense or the defense of another.
> > (c) To prevent a pupil from inflicting harm on himself or herself.
> > (d) To quell a disturbance that threatens physical injury to any person.
> > (e) To obtain possession of a weapon or other dangerous object upon or within the control of a pupil.
> > (f) To protect property.

M.C.L. § 380.1312(4) (emphasis added). Additionally, although Plaintiff argues that CCS's policy is subjective giving its personnel the freedom to commit a "multitude of potential constitutional deprivations," (Pl.'s Resp. 16), the Court finds that the policy is objective and reasonable. That is to say, the policy allows an amount of physical force that a reasonable person would use in a certain situation to maintain a safe or conducive learning environment. The policy does not give teachers carte blanche to use physical force, which is further supported

14

by the policy listing what personnel should not do to students.

Accordingly, the Court finds that CCS's reasonable force policy was not the cause of Plaintiff's claimed deprivation.

### ii.    *Custom of Inaction*

CCS argues that there is no custom which would establish municipal liability under section 1983.  Plaintiff responds that CCS's failure to act supports a claim for municipal liability. "The critical question [] is whether there is sufficient evidence in the record of municipal . . . custom . . ., so that a jury could reasonably infer that the individual conduct in this case was causally connected to the policy." *Gentile v. County of Suffolk*, 926 F.2d 142, 153 (2nd Cir. 1991).

> In *Claiborne*, the Court found that:
>
> To state a municipal liability claim under an 'inaction' theory, Plaintiff must establish:
>
> (1) the existence of a clear and persistent patter of sexual abuse by school employees;
> (2) notice or constructive notice on the part of the School Board;
> (3) the School Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
> (4) that the School Board's custom was the 'moving force' or direct causal line in the constitutional deprivation.

*Id*. at 508.

Both parties rely on the test set forth in *Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996).[8]  CCS argues that there can be no liability unless Plaintiff establishes that the school

---

[8] Indeed, the Claiborne test has been used in cases other than those involving sexual abuse.  *See Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005) (policy of tolerating federal rights violations); *see also Garretson v. City of Madison Heights*, 407 F.3d 789 (6th Cir.

board had notice so compelling that the need to act was obvious.  While admitting that not all of Blomquist's conduct was assaultive in nature, Plaintiff argues that there was a clear and present pattern of bizarre and inappropriate behavior by Blomquist.  Plaintiff argues CCS had notice or constructive notice, and deliberate indifference on the part of CCS was demonstrated by its inaction concerning Blomquist's involvement with Casey Hunt.[9]  Additionally, Plaintiff argues that but for CCS's custom of inaction, Plaintiff would not have been injured.

To repeat, following *Claiborne*, Plaintiff must show: (1) the existence of a clear and persistent pattern of assault; (2) notice or constructive notice on the part of CSS; (3) CSS' tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that CSS' custom was the "moving force" or direct causal link in the constitutional deprivation.

In support of the first element, Plaintiff proffers the Allie Willis incident and the allegations of Blomquist's involvement with Casey Hunt, as well as her psychological issues and her allegedly odd and inappropriate behavior.  The Court finds that this evidence, even in a light most favorable to Plaintiff, one incident does not support the existence of a clear and persistent pattern of assault.  Plaintiff's evidence includes one alleged incident of a prior assault.  Even if the prior assault did occur and CCS knew about it, it does not constitute a clear and persistent pattern.  Further, Plaintiff does not put forth any evidence of deliberate indifference on the part

---

2005) (policy of failing to seek medical help or transferring detainee to a location where she could receive treatment).

[9] Plaintiff alleges that Blomquist had an inappropriate incident with Casey Hunt in her classroom.

16

of CCS in allowing other teachers to assault students.  Therefore, the Court finds that it is

unnecessary to examine the remaining prongs because of the lack of a persistent pattern of

assault.  Accordingly, the Court holds that CCS's inaction was not a custom which caused

Plaintiff's deprivation.

i.      Custom or Policy of Failure to Train

"[Section] 1983 does not impose vicarious liability on a municipality for the

constitutional torts of its employees."  *Stemler v. City of Florence*, 126 F.3d 856, 865 (1997).  A

plaintiff who sues a municipality for a constitutional violation under section 1983 must prove

that the municipality's policy or custom caused the alleged injury.  *Monell v. Dep't of Soc.

Servs.*, 436 U.S. 658, 690-91 (1978).  One way to prove an unlawful policy or custom is to show

a policy of inadequate training or supervision.  *See City of Canton v. Harris*, 489 U.S. 378, 387

(1989).  Thus, to establish a basis for inadequate training, a plaintiff must demonstrate that the

school district pursued an official custom or policy of failing to adequately train or supervise its

teachers, and (2) that such official policy or custom was adopted by the official makers of policy

with "deliberate indifference" towards the constitutional rights of persons affected by the policy

or custom.  *See Haverstick v. Financial Fed. Credit, Inc.*, 32 F.3d 989, 996 n.8 (6th Cir. 1994)

(citing City of Canton, 489 U.S. at 387-88).

In the instant case, Plaintiff's Complaint states that "Defendant Clarkston Community

Schools failed to properly train and/or supervise its agent, defendant Blomquist, in proper use of

force, proper disciplinary techniques, and proper treatment of students."  (Compl. ¶ 45).

Plaintiff's Complaint also states that "Defendant Clarkston Community Schools failed to

properly screen defendant Blomquist for appropriate violence and racial tolerance criteria prior

to hiring her for a teaching position."  (Compl. ¶ 46).  CCS argues that there is no evidence that

Blomquist's training was deficient and that Plaintiff cannot prove deliberate indifference.

Plaintiff does not respond to these arguments.

      The Court finds that Plaintiff has not shown any evidence that Blomquist's training was

deficient, nor did Plaintiff demonstrate that CCS pursued a custom or policy of failing to

adequately train or supervise its teachers.  Even assuming that Plaintiff did demonstrate that CCS

had such a custom or policy, Plaintiff has provided no evidence of deliberate indifference.

      "[D]eliberate indifference is a stringent standard of fault, requiring proof that the

municipal actor disregarded a known or obvious consequence of his action. . . . [A] plaintiff

ordinarily cannot show that a municipality acted with deliberate indifference without showing

that the municipality was aware of prior unconstitutional actions of its employees and failed to

respond."  *Stemler*, 126 F.3d at 856-66.   Plaintiff argues that the Allie Willis incident, the

allegations of Blomquist's involvement with Casey Hunt, and her allegedly odd and

inappropriate behavior were evidence that CCS was aware of prior unconstitutional actions of its

employees and failed to respond.

      However, no evidence was presented to CSS that anything inappropriate occurred

between Blomquist and Casey Hunt.  Further, Blomquist's so-called odd and inappropriate

behavior does not arise to the level of a constitutional violation.

      Even assuming that CCS was aware of the Allie Willis incident prior to Plaintiff's

alleged, incident in the instant case, its action does not rise to deliberate indifference.

"[D]eliberate indifference does not mean a collection of sloppy, or even reckless oversights; it

means evidence showing an obvious, deliberate indifference to the alleged violation.  *Thomas*,

398 F.3d at 433.[10]  "A showing of simple or even heightened negligence will not suffice."

*Stemler*, 126 F.3d at 865.  The plaintiffs burden of proving municipal liability is heavy.  *Thomas*,

398 F.3d at 433.  He may not rely solely on a single instance to infer a policy of deliberate

indifference.  *Id*.

Here, the Allie Willis incident alone is not enough, as a single instance, to infer a policy

of deliberate indifference.  Plaintiff does not claim that other teachers assaulted students, nor

does he claim that the school board allowed other teachers to assault students.  Therefore, the

one instance does not about to deliberate indifference.  Therefore, the Court finds that CCS did

not have a custom or policy of failure to train.

Accordingly, the Court grants CCS's Motion for Summary Judgment on the issue of

municipal liability under section 1983.

### 3.      Special Relationship

CCS also argues that a special relationship does not exit between CCS and Plaintiff.

CCS claims that compulsory school attendance does not create a special relationship.[11]  Plaintiff

---

[10] In *Thomas*, the court stated that even when a school board had some information that a teacher may have sexually abused students in the past, the school board could not be found liable for having a policy, custom, or practice of condoning such abuse, even if the board failed to remove the teacher before he abused another student.  398 F.3d at 433. The court explained that the school board would not be liable in that situation because there was no evidence that the school board failed to act regarding other teachers in similar circumstances, and thus, there was no evidence of any deliberate pattern.  *Id*.

[11] CCS argues that under *Claiborne*, it does not have a special relationship with Plaintiff. *Claiborne* held that:

> Although, clearly, a school system has an unmistakable duty to create and maintain a safe environment for its students as a matter of common law, its in loco parentis status or a state's compulsory attendance laws do not sufficiently "restrain" students to raise a school's common law obligation to the rank of a constitutional duty. Other circuits that have considered the question have reached

does not respond to this argument.

As Plaintiff has provided no evidence that a special relationship exists, the Court grants CCS's Motion for Summary Judgment on the issue of whether a special relationship exists between Plaintiff and CCS.

### 4.      Race Discrimination

CCS argues that there is no evidence to support a race discrimination claim. CCS argues that Plaintiff must prove a conspiracy which was motivated by racial discriminatory animus. CCS asserts that there is no evidence showing that race was a factor. CCS contends that Blomquist had no history of racially motivated actions, and there is no evidence showing that CCS had any discriminatory policies or procedures. Plaintiff does not respond to this issue.

Plaintiff has provided no evidence of discrimination on the part of CCS. Therefore, the Court grants CCS' Motion for Summary Judgment as to Count VII.

## III.     CONCLUSION

For the reasons stated above, the Court GRANTS CCS's Motion for Summary Judgment in its entirety.

**SO ORDERED.**

---

the same conclusion. *See, e.g., Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 732 (8th Cir. 1993); *Maldonado v. Josey*, 975 F.2d 727, 732-33 (10th Cir. 1992), cert. denied, 507 U.S. 914, 122 L. Ed. 2d 662, 113 S. Ct. 1266 (1993); *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1372-73 (3d Cir. 1992) (en banc), cert. denied, 506 U.S. 1079, 122 L. Ed. 2d 354, 113 S. Ct. 1045 (1993); *J.O. v. Alton Community Unit Sch. Dist.*, 909 F.2d 267, 272-73 (7th Cir. 1990). The Due Process Clause, while serving as an essential vehicle to the vindication of a state's abridgment of fundamental aspects of life, liberty, and property, does not impose absolute constitutional liability on a state. Were this not the case, the most trivial of common law torts would rise to the level of a constitutional violation.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 8, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 8, 2006.

s/Denise Goodine
Case Manager

21